be moving on to our next case. In that next case, we have one of our counsel appearing by video, I think the appellant's counsel. And then we have one counsel in person. So you probably saw the drill from the earlier argument, but Mr. Hatfield, I think you'll be kicking us off if you can give us your name, even though I just gave it to you. And then just to make sure we got the right person, I guess. And then also let us know how much time you'd like to reserve for rebuttal. You may proceed. Thank you, Your Honor. May it please the court. My name is Chad Hatfield. I will be representing Mr. Mata in this appeal, and I would like to reserve two minutes for rebuttal. It is important to note this case was filed in 2016. So the standard is treating physician rule, the clear and convincing standard, which is the most stringent in Social Security cases. And even when an opinion is contradicted in the record, there must be specific legitimate reasons supported by substantial evidence. This case is an FDC federal district court remanded case and instruction of the appeals counsel back to the same ALJ was that they did not, he did not give way the treating and examining relationship that needed to be redone, but also gave way to the state agencies without acknowledging that they had not reviewed the majority of the records, including the disabling opinions of the treating and examining physicians. As we see in this case, the exact same errors were made. The administrative law judge, again, never acknowledged the treating or examining relationship in evaluation of any of the opinions. And I think it gave the appearance of a more thorough evaluation of the evidence. The AC did say that he had just given general reasons for rejecting the opinions. There's a long list of citations to the records, noting a benign presentation on mental status examination and those were given kind of thoroughly treated in my briefing. I don't want to recite all of these, but I think it's important to understand that within the list, the ALJ provided, which included many duplicates of the same treatment records, over 200 citations in our briefs showed abnormal mental static findings. And that's not the entire record. That's just from the list that the ALJ gave for benign presentation, mental status examinations. There are many, many, many other ones that the ALJ missed completely or not addressed. Could you do me a favor and sort of clarify one thing that I didn't quite understand? So in the ALJ's first decision when he's listing, I guess it's step two, the severe impairments, one of the impairments that was listed the first time around was schizophrenia, if I remember correctly. And then in this decision, schizophrenia is not listed as a severe impairment. And the ALJ gives some sort of explanation I didn't quite follow where he says, well, we're just going to include this all in sort of mental deficiencies. I can't remember exact words, but what happened there? And I mean, was he no longer? Was he, had he been cured from schizophrenia? What was going on? So the ALJ's response was that he acknowledged he's been diagnosed with schizophrenia still, but he thought that, you know, considering these other, he'll consider the symptoms of that along with the depressive and anxiety underneath that. But it does show a fundamental error the ALJ made, and that he didn't truly include schizophrenia, the lack of reality testing. Providers had noted that Mr. Mata didn't really understand his conditions or how to describe them. He often used anxiety as a description, which was actually delusional thinking. And we see the ALJ made a long list of where, you know, said, you know, typically judgment insight are intact with the words of the ALJ provided a list of three references. Now, two of those directly stated that insight and judgment were impaired. And so out of all these statements, the judge did not understand that, which led to a multitude of errors as the judge ALJ did make some erroneous findings on that for lack of compliance or substance abuse, which were noted to be a part of his impaired judgment insight as he made self reports that he was doing better in some of these situations. Yet, the mental status exams are exactly the opposite of that. So yes, the schizophrenia did not go away. That paranoid delusional thinking is noted throughout the record. And I think one of the example, one of the reasons I'll just give one example, the ALJ frequently cited to car to page 239, because there was, he was oriented times three. That means he knew, he knew his name, where he was and what he was doing there. But other findings at that same evaluation, where claimant appeared disheveled, anxious, agitated with poor eye contact and guarded eye contact was decreased. Speech was slightly pushed. Mood was agitated and affect was constricted and congruent with mood. He endorsed a history of delusions regarding rape. He refused to answer when he asked about hallucinations, even though the previous page, it did note the provider stated it was obviously paranoid and responding to internal stimuli. His judgment, concentration, attention, and recent and remote memory appeared impaired at the time he felt groggy. This was an example ALJ used repeatedly to reject the treating and examining sources and the subjective complaints that he had benign presentation upon mental status examination. So it appears ALJ had the faulty assumption that if there were one element that was normal in a mental status exam, that he could cherry pick that out and find the whole exam as a normal examination. Whereas truly being oriented times three is more of an evaluation of whether someone should be psychiatrically held, become stable, is not the proper determination defining if someone has workplace limitations. This error permeated the entire decision. The ALJ used the same string citation to reject the medical opinions and the subjective complaints in the record. Dr. Mottoyer had noted a marked limitation dealing with the usual stress due to persistent activity and task pressure. The ALJ never even addressed those findings. The ALJ had said that he is able to complete tasks at his own pace. That was ALJ's own words. He complete household chores at his own pace. And they could go with some places with his mother or with a friend. This is another example that Glarison said is a kind of deplorable feature in ALJ decisions is not understanding the difference between having task pressures in a work setting eight to five with a supervisor with levels of production required and doing things at one's own pace and only leaving the house when accompanied by another trusted individual. Dr. Ulmer, and it's important again to use the ALJ's own reasons for rejecting the opinions, not the post hoc rationalizations later, said he gave no explanation for, Dr. Ulmer gave no explanation for his justifications or limitations, which is just completely not true. Dr. Ulmer had reviewed the entire longitudinal record from his own clinic, which included five corresponding records from another clinic.  There's one other matter I'd like you to address, and that is, I sometimes get these cases confused. And if I've confused this one, please let me know. But as I recall in this case, there was references to how the medical providers and how the ALJ referred to or referenced his alcohol and substance abuse. Is that correct? So in this case, the ALJ did not find drug and alcohol used to be material. So that's fair from the beginning. Now he did say Dr. Ulmer had said it would be difficult to sort out the effects of substance abuse, which is not the bustamante, the proper analysis he made. And so the ALJ did not really reject any opinions because drugs, alcohol use, and it's factually incorrect, as Dr. Ulmer did give the opinion that he was not primarily disabled due to the substance abuse and that these limitations would persist upon 60 days of sobriety. So that was addressed, and that was not a factor the judge found a material factor in this case. So you don't believe there's any bustamante error here? Well, if the ALJ had discredited this opinion without doing a proper bustamante analysis, then the ALJ had erred. And it seemed like he gave his reasons, but I mean, really it seemed like maybe he was looking at substance abuse more as noncompliance. In that case, it was insight and judgment was kind of the response. But as far as rejecting the medical opinions, yeah, there was no proper analysis. The ALJ has to first consider all things, find if they're disabled, and then can do a new evaluation to see if he's no longer disabled without the effects of substances. That was never done. So that would certainly be error if that was the judge's approach. If he considered that, as he had noted he did, using substance abuse, then that was error. All right. So we're down to about a little less than a minute. Do you want to reserve the rest of that time, counsel? Yes. Yes, thank you. All right. We'll hear from the government. Good morning. May it please the Court, Jeff Staples here for the Commissioner, who asks that you affirm the District Court's judgment because substantial evidence supports the ALJ's fact finding. Now, I want to start out by addressing very quickly an issue that opposing counsel alerted me to that he said he might bring up this morning, and that's that, in his view, one of the state agency psychologists, John Robinson, the ALJ should not have relied on that opinion. I'm not going to spend any time on that because there were three other state agency psychologists on whose opinions the ALJ relied, so any error with Dr. Robinson would be harmless. Turning to the arguments that were made in the briefing, Matta came in and claimed that his mental impairments were so severe he couldn't be around people at all. He could hardly leave his house. He's essentially homebound is what he told the ALJ when he came to these hearings. But the record contradicted him on a number of points. The treatment record frequently showed that he was going out, and when treatment providers saw him, he was not the kind of person he described at the hearing. He was described as agreeable and positive. He's telling treatment providers that he's feeling good. So while counsel's also pointing to evidence where he's not doing so good, and that's a fair point, but the ALJ looked at the record as a whole and found that there was substantial evidence showing that he was maybe more functional than he claimed. So looking at that evidence as a whole, the ALJ was able to go back and say, you know, these statements that you made, they don't seem fully reliable based on the evidence in the record. And similarly, Dr. Ulmer's opinion of these, you know, market and extreme mental limitations didn't fully line up with the objective evidence in the record, showing that, you know, socially he's doing a lot. He doesn't present the way that you would expect someone to if they had the degree of limitation that Mata claimed and that Dr. Ulmer identified as well. As for Dr. Matoyer's opinion, to the extent it was describing those same kinds of limitations, that was also inconsistent with the record. But the ALJ also having the benefit of these state agency psychologists was able to translate those limitations. Those market limitations in dealing with the stress, specifically, you know, as he described at the hearing, those stress around social anxiety and social isolation, his difficulties that he described interacting with other people. And so the ALJ found that, you know, the ALJ agreed that this is a person with some very serious limitations. And so the ALJ found that he was limited to only simple tasks, no close coordination with others, only occasional workplace changes, and no working with the general public as part of that work environment. What happened to his delusional issues in that RFC? So the ALJ did not fully credit those. You know, as Your Honor pointed out, there was schizophrenia as one of the possible diagnoses. That's what I didn't quite understand. I read the first opinion, and, you know, it has schizophrenia listed as a severe impairment, and you come to get to this one, and it's the same ALJ, same record, essentially. And schizophrenia is not listed. Yeah, that's right. Instead, he has some general kind of statement to account for his mental impairments. And, you know, I kind of thought, well, is his schizophrenia sort of subsided? I mean, you know, schizophrenia is pretty serious. Right. I mean, it's controllable, but what does, you know, as counsel said, delusional, serious problems. Right, and what the ALJ did, what the ALJ explained, is that the disability evaluation is not a diagnosis-driven evaluation. So, you know, one doctor might characterize something as depression. Another might characterize it a different way. That doesn't really matter for how ALJs evaluate a claim of disability. What step two is, that's the step where you identify the impairments. As long as you have anything going on, we move past step two, and then we get into, you know, the meat of these cases, as the Court is aware, is what are your functional limitations? So what the ALJ said at step two, said about schizophrenia, is that it doesn't really matter what any doctor called it. Most didn't call it schizophrenia, but some did. And so what I'm going to do, the ALJ, I'm going to listen to what he says, and I'm going to listen to those, the limitations that doctors identify, and then I'm going to compare those with the objective evidence in the record. And I'm going to see, do they line up? And here they didn't. So whether it was called one thing, whether it was called another thing, isn't really determinative of what are his functional limitations. And that's the task of the ALJ here, and that's the task that the ALJ carried out. And comparing his statements about, you know, this extreme isolation, extreme social anxiety, it was not lining up with how he appeared agreeable and positive with so many of his treatment providers. So that's why the ALJ moved on from step two and declined to kind of parse out what exactly is the diagnostic label that needs to be assigned to this, because that just isn't the – that's not where this rises and falls. So but the ALJ did what the ALJ needed to do, which was compare those functional limitations to the evidence in the record, and the ALJ reasonably did that here. The ALJ reasonably took a look at the whole record, and although counsel obviously is able to point to other evidence, that a different fact finder might have reached a different conclusion on. You know, it's not in dispute that someone could reach a different decision here, but that's not the standard. That's not what we're doing here today. What we're doing here is trying to decide whether any reasonable person could have reached the same conclusions that the ALJ did. And the evidence on which the ALJ relied is sufficient to support that conclusion under the deferential substantial evidence review that this court is tasked with. So unless there are any further questions, thank you for your time. Thank you, counsel. We'll go ahead and put a minute on for rebuttal. Thank you. So I think it's important to look at the ALJ's own words of how he described activities of daily living, that Mr. Modick could do household activities at his own pace and could leave the home once or twice a month with his mother or friend. That's how the ALJ described the activities and how Mr. Modick described his activities, and those are not inconsistent with the mark-level limitations. Also, the ALJ made no RFC finding that would incorporate the limitations made for having to do persistent tasks and pressures, the mark-level attendance, missing days of work, and being off-task behavior by nurse or nurse cast. Those are not contradictory to being able to leave one's house accompanied by another individual once or twice a month. So it is imperative that we look at, too, what the ALJ actually did, non-impermissible post hoc rationalizations. It's not a reasonable person if they cherry-picked out just the evidence finding their normal findings and ignored the bulk majority of the records that have a different conclusion. There is a clear and convincing standard here. There is substantial evidence for specific legitimate reasons, and the ALJ failed in his decision to do those things. Therefore, Mr. Modick asks that those opinions be credited as true and that benefits be awarded. Thank you. Thank you, counsel. Thank you to both counsel. That concludes the argument in this case. We'll be moving on to the next one.
judges: PAEZ, VANDYKE, Liburdi